IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| United States of America | Criminal Action No. |
|---|---|
| v. | 1:20-CR-208-ELR |
| Jianjie Liu | |

**The Government's Sentencing Memorandum**

The United States of America, by Ryan K. Buchanan, United States Attorney, and Diane C. Schulman, Special Assistant United States Attorney for the Northern District of Georgia, files this sentencing memorandum. At the sentencing hearing scheduled for June 16, 2022, the Government will recommend a sentence in the middle of the Guideline range.

**I.     Procedural History**

On June 10, 2020, a grand jury in the Northern District of Georgia charged Defendant Liu in an 11-count indictment with a money laundering conspiracy, substantive counts of money laundering, and one count of access device fraud. On March 14, 2022, Liu pled guilty to count one of the indictment pursuant to a negotiated plea agreement. The PSR correctly calculated Liu's total offense level as 19, her criminal history category as I, and her guideline range as 30-37 months. (PSR, p. 20). There are no objections to the PSR that affect the Guideline calculation.

II. **A Guideline sentence is reasonable**.

In arriving at an appropriate sentence for the defendant, the Court must consider a list of factors, including: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment, (3) the Sentencing Guidelines and related Sentencing Commission policy statements, and (4) the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a). Each of these factors support a sentence of incarceration within the applicable Guideline range.

Impersonation scams are widespread and continue to proliferate. Numerous spin-off scams involving impersonation of government officials from various agencies, such as the Social Security Administration, as well as other types of phone fraud and money laundering schemes, continue to victimize U.S. residents at high rates. Because of the pervasive nature of these scams, in June 2019, the Department of Justice announced a Transnational Elder Fraud Strike Force, emphasizing that the investigation and prosecution of this type of scam is an priority of the Department of Justice. *See* https://www.justice.gov/opa/pr/justice-department-announces-new-transnational-elder-fraud-strike-force (last visited June 8, 2022). As part of a separate "Landmark Money Mule Initiative" announced on December 4, 2019,

the Department of Justice emphasized, "Money mules –wittingly and unwittingly – supply the lifeblood of transnational elder fraud schemes." *See* https://www.justice.gov/opa/pr/justice-department-announces-landmark-money-mule-initiative (last visited June 8, 2022). In 2020 alone, law enforcement took against approximately 2,300 money mules as a result of this initiative. *See* https://www.justice.gov/usao-pr/pr/us-law-enforcement-takes-action-against-appromixately-2300-money-mules-global-crackdown (last visited June 8, 2022).

The schemes that Liu laundered money for defrauded victims across the United States out of hundreds of thousands of dollars. These scams cruelly target the elderly, but anyone can fall victim. The victims here included an 89-year-old priest in Minnesota; a 78-year-old grandfather in South Carolina; a 78-year-old woman and an 83-year-old woman in Washington state; a 67-year-old man in Missouri; a 69-year-old woman in Texas and also included younger individuals including 2 college students. These victims lost over $400,000. In addition to sending Liu money or providing gift card information that Liu ultimately used, these victims also sent thousands of dollars to other "money mules" involved in the criminal conspiracy.

While oftentimes money mules are somewhat unwitting, Liu was not. Contrary to Defense counsel's assertion that Liu was "willfully blind" and "recklessly ignored" the source of funds she received, the evidence shows that since at least as early as May 2019, Liu was on notice that she was involved in a criminal conspiracy. Yet, she continued to participate.

In May 2019, she was denied entry into Canada by border agents when a search of her vehicle discovered hundreds of prepaid gift cards valued at nearly $150,000, an endorsed check for over $13,000 made payable to "A&J Commercial Services" and nearly $4,000 in cash. *See* Gov't Ex. 1 (CPB report). Liu was returned to U.S. Customs and Border Protection where agents seized the gift cards, the endorsed check, and the cash. *Id*.

After that interaction with law enforcement, Liu continued to engage in money laundering. In October 2019, Liu was arrested by Duluth Police after she was stopped at a local Walmart and discovered to have over 700 gift cards in her possession. PSR, ¶ 10. She remained in Gwinnett County jail until on or about April 21, 2020. Thus, if she had any question after the May 2019 interaction with law enforcement about whether her conduct was criminal, she certainly knew that her conduct was criminal after spending six months in jail.

The investigation showed that Liu was in direct contact with the scammers. She received text messages from the scammers that contained shipping information for victim checks she would later receive and deposit into a bank account she controlled. *See e.g*. Gov't Ex. 2 (Text message found in Liu's phone). And, as outlined in the indictment, she used the passcode and PIN information associated with gift cards that victims purchased the same day the victims purchased the cards. She was able to do this even though the victim was often in another part of the country than Liu.

On or about June 4, 2020, less than two months after she was release from Gwinnett County jail, Liu opened a business bank account in the name A&J Commercial Services at Prosperity Bank in Texas. *See* Gov't Ex. 3 (Prosperity Bank records). Over the next 16 days, Liu laundered approximately $57,000 in scam victims' funds. *See* Gov't Ex. 4 (ROI). On or about June 20, 2020, Prosperity Bank closed the account because of suspected fraud. Because of this conduct, the Government sought to revoke her bond and have her detained. But, even this was not enough to stop Liu from laundering money. In January 2021, Liu was arrested in Pearland, Texas when she attempted to retrieve packages that contained cash sent from scam victims to a designated address. PSR ¶ 58.

This evidence shows that Liu was not only knowledgeable but also committed to laundering funds for this criminal conspiracy. At any time since at least May 2019, Liu could have walked away from the conspiracy but she chose not to. Instead, she went to great lengths to continue her criminal conduct, even after she was denied entry into Canada and law enforcement seized over $150,000 in contraband; after she spent 6 months in county jail; after she was indicted by a federal grand jury; after the Government sought to detain her because of new criminal conduct. She continued to launder funds for the criminal conspiracy. It appears that the only reason she is not laundering funds at this time is because she is detained.

All of this conduct shows not only Liu's willful and knowledgeable participation in the criminal conspiracy, it also shows her grave disrespect for the law. But her disrespect for the law does not end there. In March 2021, rather

5

than meet with U.S. Probation in the Northern District of Georgia and face the consequences of her January 2021 arrest, Liu absconded. PSR ¶ 7. She was finally arrested in October 2021 when she attempted to re-enter the United States at the southern border. PSR ¶ 7. Liu has shown by her actions that she does not respect the law, the Government, or this Court's authority. Anything less than a sentence in the middle of the Guidelines would not reflect the seriousness of the offense, promote respect for the law, or provide adequate deterrence for future crimes.

For these reasons and as will be discussed at the sentencing hearing, the Government recommends that Liu receive a sentence in the middle of the Guideline range.

III. **The Court Should Not Give Credit for Time Served in State and Federal Custody.**

In Liu's objections to the PSR, she asked the Court to downwardly depart or adjust Liu's sentence by up to 458 days or 15.1 months because of time spent in state and federal custody.[1] The Court should deny this request.

On or about October 3, 2019, Liu was arrested by Duluth Police Department and placed in Gwinnett County jail. She remained there until April 21, 2020, at which time she was released. On or about October 7, 2021, Liu was arrested at the southern border in Texas. On that date, she was transferred from ICE into

---

[1] Defense counsel incorrectly asserted that Liu was in ICE custody from October 7, 2021 until she appeared in the Northern District of Georgia on or about January 18, 2022.

6

USMS custody. She has remained in USMS custody since October 7, 2021. If the Court were to grant Liu's request for a downward departure based on time spent in state and federal custody, the Court would affectively give Liu double credit, as the Bureau of Prisons is instructed by statute to give Liu credit for time she has spent in federal or non-federal custody to date.

Under 18 U.S.C. § 3585(b), "A defendant shall be given credit toward the service of a term of imprisonment for any time [s]he has spent in official detention prior to the date the sentence commences-- (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence." The Supreme Court held that courts are prohibited from applying this credit, rather "it is the Attorney General who computes the amount of the § 3585(b) credit after the defendant has begun to serve his sentence." *United States v. Wilson*, 503 U.S. 329 (1992). Under the statute, the BOP "shall" award credit for time Liu spent in official detention before her sentence begins where it has not been applied to another sentence. If this federal court applies a credit in the form of a downward departure, Liu would end up with a double credit. A downward departure for credit for time spent in federal or state custody, therefore, is inappropriate.

## Conclusion

For the reasons discussed above and at the sentencing hearing, the Government asks that Defendant be sentenced to a sentence in middle of the Guideline range.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*

/s/DIANE C. SCHULMAN
*Special Assistant United States Attorney*
Georgia Bar No. 497764
diane.schulman@usdoj.gov

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000   fax (404) 581-6181

## Certificate of Service

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

        Randy Chartash

        David Chaiken

June 10, 2022

                                /s/ DIANE C. SCHULMAN

                                DIANE C. SCHULMAN

                                *Special Assistant United States Attorney*